(November 18, 1955.)

■

APPROVED PHARMACEUTICAL CORP., Respondent, v. MORRIS M. LEVINE et al., Appellants.

KIMBALL, J. (dissenting). The cause of action of the corporate plaintiff is based upon an alleged breach of a written contract between the plaintiff and the defendant Levine, executed on March 11, 1952, which contract restricted Levine as a future competitor of the plaintiff. On the same date, the defendant Levine entered into another contract with one Putter and one Michaelis, not parties to this action, by which said Levine gave an option to said Putter and Michaelis to purchase Levine's stock in the plaintiff corporation. This stock

purchase option contract was carefully and meticulously drawn and the manner in which the option was to be exercised was exact and precise. Likewise the terms of payment for said stock were set out in detail. This option agreement provided that the restrictive contract between Levine and the plaintiff was to " become effective on the date of the termination of the First Party [Levine] from the pay-roll " of the plaintiff and Levine therein agreed that his removal from the payroll was to be " at the termination of the calendar week following the service of the written notice of the election to exercise the option herein described."

It thus is evident that the restrictive agreement between the plaintiff and Levine was entirely dependent upon the exercise by Putter and Michaelis of their option under the agreement with Levine in accordance with the terms of such option agreement. It was the service of written notice signed by Putter and Michaelis personally upon Levine which would bring into being the restrictive contract between Levine and the plaintiff. It is undisputed that no such notice of election was ever served upon Levine. It appears that prior to April 14, 1952, the expiration date of the option agreement, Levine on the one side and Putter and Michaelis on the other, and on April 7, 1952, disregarded and abandoned the written option agreement of March 11, 1952, and thereupon entered upon and completed a new and different agreement by which Levine transferred his stock. The terms of this transfer and payment for the stock were not the same as the parties had agreed to in writing on March 11, 1952. The oral arrangement for the sale and transfer of the Levine stock to Putter and Michaelis did not incorporate therein the restrictive agreement between Levine and the plaintiff corporation. Since the written option agreement was never carried out, the restrictive agreement never went into effect. Of course, Levine and his transferees, Putter and Michaelis could make any contract they desired for the sale of Levine's stock without the consent of the plaintiff corporation. This they did on April 7, 1952, and by abandoning and abrogating the prior written option agreement on which hung the coming into being of the restrictive agreement with the corporate plaintiff, the parties to the stock sale of April 7, 1952, effectually put an end to the restrictive agreement with the plaintiff.

The corporate plaintiff alleges due performance of its agreement with Levine. It also alleges: " That on or about April 7, 1952, the defendant Levine, sold his said stock according to the terms set forth in Exhibit ' B ' and terminated his services with the plaintiff." The proof not only does not sustain this allegation but is contrary thereto. Putter and Michaelis did not carry out the provisions of said exhibit " B ". Due performance by Putter and Michaelis of said agreement was the *sine qua non* of the birth and vitality of Levine's agreement with the corporate plaintiff. Waiver of due performance was not pleaded nor proved. It is familiar law that an option to become a valid and enforcible contract of sale must be accepted in the manner and according to its terms, without change and unconditionally. Concededly, this was not done. The option not having been exercised and the stock purchased according to the terms of the option agreement, the contract between the plaintiff and Levine never became effective. (See *Kotcher* v. *Edelblute*, 250 N. Y. 178, and *Matter of Kennelly* [*Theodore Adv. Service*], 197 Misc. 667.)

It is my opinion that the judgment should be reversed and the complaint dismissed on the merits.

All concur, except McCurn, P. J., and Kimball, J., who dissent and vote for reversal and for dismissal of the complaint in an opinion by Kimball, J.

Present — McCurn, P. J., Vaughan, Kimball, Wheeler and Van Duser, JJ.